# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **CYNTHIA K. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:16-cv-00073-SLC** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** *sued as Nancy A. Berryhill,* | ) | |
| *Acting Commissioner of Social Security,*[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Cynthia K. Johnson appeals to the district court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying her application under the Social

Security Act (the "Act") for Disability Insurance Benefits ("DIB").[2]  For the following reasons,

the Commissioner's decision will be REMANDED.

## I.  BACKGROUND

On October 15, 2011, Johnson filed for DIB, alleging disability beginning on April 21,

2010.  (DE 10 Administrative Record ("AR") 21, 90-93).  On January 10, 2012, Johnson's claim

was denied.  (AR 90-97).  On April 15, 2013, Johnson filed for DIB again, alleging the same

onset date of April 21, 2010.  (AR 107).

Johnson's claim was denied initially on July 2, 2013, and upon reconsideration on August

20, 2013.  (AR 99-115).  Johnson filed a request for a hearing before an Administrative Law

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge.  (DE 26); *see* 28 U.S.C. § 636(c).

Judge. (AR 116-17). On November 4, 2014, Administrative Law Judge Yvonne K. Stam (the "ALJ") held a hearing, at which Johnson and Micha Daoud, a vocational expert (the "VE"), testified. (AR 42-67). Johnson was represented by attorney Gary Davis at the hearing before the ALJ. (AR 42). At the hearing, the ALJ allowed a reopening of Johnson's application for DIB from 2011 pursuant to 20 C.F.R. §§ 404.987 and 404.988. (AR 21). Johnson also amended her application for DIB to allege a closed period of disability from April 21, 2010, through June 1, 2014. (AR 21, 170). On March 25, 2015, the ALJ issued an unfavorable decision, finding that Johnson was not disabled because during the alleged period of disability, she could perform her past relevant work as an account clerk. (AR 18-35). Johnson requested that the Appeals Council review the ALJ's decision (AR 8), and the Appeals Council denied her request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-7).

On February 24, 2016, Johnson filed a complaint with this Court seeking relief from the Commissioner's final decision. (DE 1). In her appeal, Johnson alleges that the ALJ erred by: (1) determining that Johnson had the residual functional capacity ("RFC") to perform light work between April 21, 2010, and June 1, 2014, such that she was not disabled for a period of 12 months; and (2) discrediting Johnson's symptom testimony. (DE 15 at 5).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 423(d)(3).

In determining whether Johnson was disabled as defined by the Act from April 21, 2010, to June 1, 2014, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence:  (1) whether the claimant was unemployed; (2) whether the claimant had a severe impairment; (3) whether the claimant's impairment met or equaled one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant was unable to perform her past work; and (5) whether the claimant was incapable of performing work in the national economy.[3]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant was not disabled.  *Id*.  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, the ALJ found that Johnson had not engaged in substantial gainful activity since her alleged onset date of April 21, 2010, through the end of the second quarter of 2014. (AR 24).  At step two, the ALJ found that Johnson had the following severe impairments: degenerative disc disease, status post fusion surgery at C5-6 and L4-5, and obesity.  (AR 24-28).

At step three, the ALJ concluded that Johnson did not have an impairment or combination of impairments severe enough to meet or equal a listing during the alleged closed

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 404.945(a)(5).

period of disability.  (AR 28).  Before proceeding to step four, the ALJ determined that

Johnson's symptom testimony was "not entirely credible" (AR 33), and assigned her the

following RFC from April 21, 2010, through June 1, 2014:

> [T]he claimant has the [RFC] to perform light work . . . except she
> could never climb ladders, ropes, and scaffolds; could only
> occasionally climb ramps and stairs; could occasionally balance,
> stoop, kneel, crouch, and crawl; was limited to no more than
> occasional overhead reaching; and was limited to work allowing
> her to sit or stand as needed but able to maintain a posture at least
> 20 minutes.

(AR 29).  The ALJ found at step four that Johnson could perform her past relevant work as an

account clerk.  (AR 34).  Therefore, Johnson's application for DIB was denied.  (AR 35).

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."  42

U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings

are supported by substantial evidence, which means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744

(7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by

substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or

substitute its judgment for the Commissioner's.  *Id*.  Rather, if the findings of the Commissioner

are supported by substantial evidence, they are conclusive.  *Id*.  Nonetheless, "substantial

evidence" review should not be a simple rubber-stamp of the Commissioner's decision.  *Id.*

## IV.  ANALYSIS

Johnson argues that the ALJ erred in finding her symptom testimony not entirely credible.

An ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness.  *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997).  If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"); *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." (citations omitted)). Additionally, "an ALJ's evaluation of a[n] applicant's credibility must be specific enough to make clear to [the court] how much weight the ALJ gave to the applicant's testimony and the reasons for that decision.'" *Daniels v. Colvin*, No. 12 C 9317, 2014 WL 2158999, at *13 (N.D. Ill. May 23, 2014) (alterations in original) (quoting *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008)).

The ALJ discredited Johnson's symptom testimony based on a report describing

Johnson's ability to perform daily activities and based on her employment record. As discussed below, the ALJ's credibility assessment is not supported by substantial evidence and requires a remand.

*A. Johnson's Employment Record*

First, Johnson argues that the ALJ failed to appropriately consider her work history. Generally, "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). An ALJ should not make an adverse credibility determination because the claimant worked while disabled or while in pain. *See id.* ("Third, the ALJ reasoned that Hill was stretching the truth about her neck pain because she still wanted to work, and because she performed manual labor for many years after her neck surgery."); *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("In assessing Stark's credibility about the disabling effects of her pain, the ALJ should have acknowledged Stark's efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it." (citations omitted)); *Bowen v. Berryhill*, No. 116CV01877DMLWTL, 2017 WL 4324743, at *3 (S.D. Ind. Sept. 29, 2017) ("Further, the ALJ suggested that Ms. Bowen's post-onset, part-time work for the hotel laundry reflected negatively on her credibility."). The Seventh Circuit Court of Appeals has applied this principal when considering a claimant's work history prior to the alleged onset date, *see Flores v. Massanari*, 19 F. App'x 393, 404 (7th Cir. 2001) ("Further, the ALJ failed to even acknowledge Flores's solid work history; Flores had been employed each year for the thirteen years before his illness."), and the claimant's efforts to remain employed after the onset date, *see Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("But a claimant's dogged efforts to work beyond her physical

capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms.").

When a claimant holds herself out as able to work to obtain unemployment benefits, courts "look at the totality of circumstances in deciding the significance of an application for unemployment benefits." *Pursell v. Colvin*, No. 12 CV 5455, 2013 WL 3354464, at *11 (N.D. Ill. July 3, 2013) (citation and internal quotation marks omitted). "[A] claimant may be able to explain that desperate financial straits forced [her] to certify an ability to work even though [she] was disabled at the time." *Id*. (citing *Richards v. Astrue*, 370 F. App'x 727 (7th Cir. 2010)). Similarly, when a claimant maintains part-time employment after the alleged onset date, an ALJ should consider whether the claimant is "working beyond [her] capacity of desperation." *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) (collecting cases); *see Richards*, 370 F. App'x at 732 (citation omitted); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)).

At the administrative hearing, Johnson testified that she worked about 25 hours a week when she worked part time from May 2013 to June 2014. (AR 53). Johnson testified that her condition improved somewhat after her cervical-spine surgery in May 2012, but she did not return to work at that time because she continued to experience "severe problems [with] walking, with balance, [and with] lower back pain" in addition to allergies caused by steroid treatments that confined her to her bed. (AR 55, 60). Johnson also testified that she returned to part-time work because she did not have enough money to live on. (AR 56-58). And while the ALJ discussed Johnson's "New Hire, Quarterly Wage, Unemployment Query" report in reviewing her

employment history, the ALJ did not discuss Johnson's application for unemployment benefits referenced therein. (*See* AR 55-60 (referencing AR 187); *see also* AR 30). Additionally, Johnson's attorney pointed out to the ALJ that she held the same job from 1994 to 2000. (AR 62; *see also* AR 177-78, 187). Finally, Dr. Brill's report dated August 20, 2013,[4] states:

> [Johnson] has attempted to **return to work**; however, this work was determined to be an unsuccessful work attempt because the individual **was out of work for at least 30 consecutive** days and the work activity was discontinued or reduced to a non-SGA level in **3 months or less** due to the impairment or removal of special conditions essential to performance of work.

(AR 81 (emphasis in original)).

In the ALJ's decision, she found that Johnson's applications for unemployment benefits from October 2012 through May 2013 undercut her claim that she was entirely unable to work. (AR 30, 32). The ALJ also considered Johnson's part-time employment from May 2013 to June 2014 as an indication that her pain was not disabling. (AR 30). The ALJ acknowledged Johnson's testimony that she applied for unemployment benefits and worked part-time because she "ran out of money and needed to support herself," but concluded that "individuals do not have to be pain-free to work at sustained gainful levels." (AR 30 (referencing AR 56-58)). Neither did the ALJ mention Dr. Bill's observation that Johnson's impairments caused her to leave work for at least 30 consecutive days. The ALJ gave little consideration to Johnson's work history before the alleged onset date, finding that her ability to "work and earn well above the level for substantial gainful" employment in 2009 and part of 2010 discredited her claim that she experienced intense headaches since 2004. (AR 31 (referencing AR 197-98)).

In reviewing the evidence of record, the Court is satisfied that the ALJ's credibility

---

[4] Notably, the ALJ assigned "great weight" to Dr. Brill's report. (AR 34).

determination with respect to Johnson's employment history is flawed. Johnson testified that she

was beginning to run out of money in 2012, suggesting "dire financial straits," which may have

compelled her to apply for unemployment benefits. *Schmidt*, 395 F.3d at 737; *Robinson v.*

*Astrue*, No. 1:11-CV-01591-DML, 2013 WL 1002883, at *6 (S.D. Ind. Mar. 13, 2014). Thus,

"the ALJ should have given [Johnson] an opportunity to explain [her] receipt of unemployment

benefits before determining that that circumstance reflects so poorly on [her] credibility."

*Robinson*, 2013 WL 1002883, at *6.

It is true that the ALJ considered Johnson's financial situation in evaluating Johnson's

part-time employment from May 2013 through June 2014. However, this analysis compounds

the ALJ's error. The ALJ acknowledged that evidence of record supports Johnson's testimony

that she suffered disabling pain while working part time and that limited finances forced her to

begin working in the first place, but the ALJ failed to articulate why this testimony was not

credible. Neither did the ALJ connect her conclusory statement that "individuals do not have to

be pain-free to work at sustained gainful levels" (AR 30) to evidence of record, as to establish

that Johnson's pain was not as severe as she alleges, *see Ribaudo*, 458 F.3d at 584 (citation

omitted). Therefore, the ALJ's conclusion that Johnson's attempt "to work after the onset date

of disability" means that she "was not disabled," constitutes error. *Vandergraff v. Berryhill*, No.

4:17-CV-06-JEM, 2018 WL 1282293, at *3 (N.D. Ind. Mar. 13, 2018); *see Shauger v. Astrue*,

675 F.3d 690, 697 (7th Cir. 2012); *Devine v. Berryhill*, No. 2:17-CV-14-JEM, 2018 WL

1054158, at *5 (N.D. Ind. Feb. 26, 2018) (citation omitted).

Moreover, the ALJ did not address Dr. Brill's report, which suggests that Johnson's pain

or impairments were disabling while she worked part time. "An ALJ has the obligation to

consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)); *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In fact, had the ALJ developed the record, she may have considered Johnson's employment after the alleged onset date favorably in her credibility determination. *See Stark*, 813 F.3d at 689 ("In assessing Stark's credibility about the disabling effects of her pain, the ALJ should have acknowledged Stark's efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it." (citations omitted)).

Additionally, the ALJ failed to credit Johnson in light of her good work record prior to the onset date. In fact, the Seventh Circuit has specified that a claimant's good work record is entitled credibility where the claimant's condition becomes gradually severe or is degenerative in nature, similar to Johnson's degenerative disc disease. *See Stark*, 813 F.3d at 689 (criticizing the ALJ for not considering the claimant's good work history in light of her "numerous surgeries and other treatments" to relieve the pain caused by degenerative disc disease); *Hill*, 807 F.3d at 869 (finding the claimant's work history was entitled to credibility, in part, because she suffered from degenerative joint disease "which often grows more severe with the passage of time").

Adding to the Court's concern is the ALJ's consideration of two hospital reports where Johnson was "described" as not employed instead of "disabled." (AR 30). These reports inquired into Johnson's employment history or status, and it is not clear whether Johnson could have responded "disabled" or "unable to work." (*See* AR 645, 764). The ALJ failed to explain how these reports were relevant as to be entitled to any, if only "very little weight." (AR 30). The Commissioner recognizes that Johnson's arguments regarding her employment history, but

does not meaningfully respond to them.[5] (DE 21 at 12). Therefore, on remand, the ALJ should

consider the totality of circumstances surrounding Johnson's employment record, including Dr.

Brill's report, her financial situation when she applied for unemployment benefits and when she

began working part time, and her good work record.

### B.  Johnson's Daily Activities

Next, Johnson argues that the ALJ erred in finding that a functional report describing

some of Johnson's daily activities, which was completed by Johnson's friend, David Myers

("Myers"), undermined her symptom testimony.  The ALJ may consider the "consistency of the

individual's statements with other information in the case record, including reports and

observations by other persons concerning the individual's daily activities, behavior, and efforts

to work."  SSR96-7p, 1996 WL 374186, at *6 (July 2, 1996).[6]  However, the Seventh Circuit has

"cautioned the Social Security Administration against placing undue weight on a claimant's

household activities in assessing the claimant's ability to hold a job outside the home." *Mendez*

*v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (collecting cases).  The ALJ must be cognizant of

the "differences between activities of daily living and activities in a full-time job . . . ." *Bjornson*

*v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).  "[A] person has more flexibility in scheduling" her

daily activities, she can receive assistance from others, and she is not held to a minimum

---

[5] In fact, the Commissioner meaningfully responds to only one of Johnson's credibility arguments.  (DE 21 at 10-13).  Despite using only 13 of a possible 25 pages, N.D. Ind. L.R. 7-1(e), the Commissioner merely asserts that it is "unreasonable" for Johnson to expect the Commissioner to respond to all of her arguments (DE 21 at 12). Given that Johnson presented her arguments in only 15 pages, the Court is not persuaded that it was unreasonable to expect the Commissioner to respond to her arguments.  Therefore, the Court considers any counter arguments to Johnson's credibility arguments discussed in this opinion waived. *See Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (explaining in a social security appeal that undeveloped arguments are deemed waived) (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007)).

[6] Social Security Ruling 96-7p, was superseded by Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), in March 2016, but Social Security Ruling 96-7p governed at the time the ALJ issued his decision. Accordingly, SSR 96-7p applies to this case.

standard of performance, as she would be "by an employer." *Id*.; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("But even if he plucked the phrase from one of Punzio's treatment notes, her ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace." (collecting cases)); *Mendez*, 439 F.3d at 362 ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."); *Vandergraff*, 2018 WL 1282293, at *4 (collecting cases).

Myers's report, dated May 24, 2013, observed that Johnson could not "stand or sit for long periods of time" (AR 270), and that she had difficulty sleeping because "her feet [were] totally numb by the end of the day" and because her arms and legs were sore (AR 270). The report also indicates that Johnson required special reminders to take care of personal needs and grooming and help taking medicine (AR 271), and that her ability to walk was limited due to a lack of endurance, pain in her legs, and numbness in her feet. (AR 273). Myers reported that Johnson requires help to perform household tasks and yardwork. (AR 271). Finally, Johnson went out in social settings less frequently due to a lack of endurance. (AR 273-74).

At the hearing the ALJ asked Johnson about her daily activities, and her ability to perform remedial tasks currently. (*See* AR 49-50). However, the ALJ did not ask any questions about Myers's function report, which was created more than a year before the hearing. (AR 60). In the ALJ's decision she highlights that Johnson performed the following tasks according to Myers's report: taking care of her personal hygiene with "no difficulty"; taking care of her three dogs, including giving one of them insulin shots; taking care of Myers after he had knee replacement surgery; preparing simple meals; doing the laundry and mowing the lawn; driving a car; and handling her bank accounts, and paying bills. (AR 30-31 (referring to AR 269-76)).

Johnson's ability to perform some household activities is not sufficient to establish that Johnson is able to work full time. *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("[T]he ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." (citation and internal quotation marks omitted)); *Vandergraff*, 2018 WL 1282293, at *4. To the contrary, the report shows that Johnson requires help in performing daily activities, and that her ability to walk is limited. *See Gentle*, 430 F.3d at 867 ("Uncontested evidence not mentioned by the administrative law judge reveals that she performs these chores with difficulty, and with the aid of her sister, a neighbor, and another woman."); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("[The ALJ] didn't mention the evidence that Spiva's performance of household chores was incompetent; as the aunt with whom he had lived for a time stated, he needed help with everything because 'his mind runs a lot.'"). Moreover, in stark contrast to the ALJ's statement that Myers's report "described [Johnson] as having no difficulty with personal hygiene" (AR 30), Myers reported that she needed special reminders to take care of personal hygiene needs and grooming and help taking medicine (AR 271). The ALJ erred by failing to discuss this evidence as it "points to a disability finding." *Denton*, 596 F.3d at 425 (7th Cir. 2010) (citation omitted); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

The ALJ's questioning of Johnson at the hearing cannot cure this error because the ALJ addressed Johnson's ability to perform daily activities at the time of the hearing, six months after the closed period of alleged disability had ended. *See, e.g.*, *Punzio*, 630 F.3d at 712 ("Rather than addressing Punzio's comprehension skills directly, the ALJ instead surmised that her condition has improved over the years . . . ."). On remand, the ALJ should develop the record as to Johnson's ability to perform daily activities during the closed period of alleged disability,

including any difficulties that she experienced.

### C.  Not Harmless Error

Finally, none of these errors were harmless as the ALJ's adverse credibility finding factored into her determination that Johnson's condition was not as severe as she alleged, as to warrant assigning a more conservative RFC.  (*See* AR 32); *see Schramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).  In particular, the ALJ considered Johnson's part-time work from May 2013 to May 2014 as evidence that Johnson was able to perform light work full-time during that period.  (AR 32).  Similarly, the ALJ apparently concluded that Johnson was able to work at substantial gainful levels from the fourth quarter of 2012 through the second quarter of 2013, in part, because she received unemployment benefits.  (AR 30).  Finally, the ALJ's assessment of Johnson's ability to perform daily activities, as described in Myers's functional report, was insufficient.  (AR 32).  Consequently, the ALJ's decision will be remanded.[7]

### V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is directed to enter a judgment in favor of Johnson and against the Commissioner.

SO ORDERED.  Entered this 11th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[7] Because a remand is warranted for reconsideration of Johnson's symptom testimony, the Court need not reach Johnson's remaining argument.